**WO**                                    NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| L.M.H., *et al.*, | No. CV-14-02212-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Department of Education, *et al.*, | |
| Defendants. | |

At issue is an administrative law judge's ("ALJ") denial of Plaintiffs' Due Process Complaint under the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs filed a Complaint (Doc. 12, Compl.) with this Court seeking judicial review of that denial, and the Court now considers Plaintiffs' Opening Brief (Doc. 30, Br.), Defendant Deer Valley Unified School District's ("Deer Valley") Answering Brief (Doc. 34, Answer), and Plaintiffs' Reply Brief (Doc. 35, Reply). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

I.      **BACKGROUND**

Plaintiffs raise a claim against Deer Valley on behalf of themselves ("Parents," including "Mother" and "Father") and their minor son, L.M.H. ("Student"), to appeal an administrative decision under IDEA, 20 U.S.C. § 1415(i)(2). Plaintiffs allege Student has learning disabilities and Deer Valley failed to provide him with a Free Appropriate Public

Education ("FAPE") from 2011 to 2013, as required under IDEA, by failing to properly consider extended school year ("ESY") services, providing inadequate speech services, denying Parents meaningful participation during individualized educational program ("IEP") team meetings, and committing various other procedural violations. (Br. at 11–25.) On December 2, 2013, Plaintiff filed a Due Process Complaint with the Arizona Department of Education raising eleven claims. (Compl. at 2–7.) On February 14, 2014, Plaintiffs filed an amended Due Process Complaint adding five new claims. (Doc. 33, Admin. Record ("R.") 79 at 1.) ALJ Eric A. Bryant held a hearing on Plaintiff's Due Process Complaint over a five-day period, from April 21, 2014 to April 25, 2014, and issued a decision on September 2, 2014, denying Plaintiffs' Due Process Complaint. (R. 293, ALJ Decision ("ALJ") at 1–25.)

In their Complaint before this Court, Plaintiffs allege the ALJ erred by, among other things, misunderstanding the legal issues, finding that Student made progress with the number of hours provided for speech services, finding that Parents were full participants in the IEP process, and finding that Deer Valley provided Student a FAPE over the relevant period. Plaintiffs request that the Court reverse the ALJ's September 2, 2014 decision, find that Deer Valley denied Student a FAPE, award reimbursement for past educational and related expenses, and award Plaintiffs their expenses, attorneys' fees, and costs in enforcing Student's special education rights. (Compl. at 22-23.)

The ALJ Decision in this case is a 25-page order setting forth the witnesses, evidence, and issues at the hearing along with detailed findings of fact. The ALJ states he considered the entire record, including all the testimony and every exhibit. Because the Court finds the ALJ was thorough and careful in his findings, the Court concludes they are entitled to significant weight. *JG v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008).

Student was three years old in October 2011 when first referred to Deer Valley. (ALJ ¶ 1.) After a screening and evaluation of Student, a team of educators, Mother, and a speech pathologist met in November 2011 to determine whether Student was eligible

for special education services. (ALJ ¶ 1.) As part of this process, and as required by IDEA, Deer Valley informed Parents of their procedural safeguards. (ALJ ¶ 1.) The team considered the results of Deer Valley's comprehensive developmental assessment and found that Student exhibited age-appropriate skills in all areas except speech sound production. (ALJ ¶ 2.) This qualified Student for eligibility under the IDEA category of Preschool Severe Delay. (ALJ ¶ 2.) The goal of the recommendations was to allow Student to access education, not to remediate his disability. (ALJ ¶ 2.) Again, Deer Valley notified Parents of their procedural safeguards. (ALJ ¶ 2.)

On December 1, 2011, Student's IEP team, which included Mother, met and created an IEP for Student. (ALJ ¶ 3.) The IEP contained two speech goals and required the therapist to measure progress by collecting data. (ALJ ¶ 3.) The IEP stated that Parents would be informed of progress through progress reports, which the record shows were made quarterly. (ALJ ¶ 3.) Over the next six months, Student made some progress toward his goals. (ALJ ¶ 3.)

Parents decided not to place Student in preschool and rejected the recommended placement. (ALJ ¶ 4.) Therefore, the IEP provided for speech services only and no academic placement. (ALJ ¶ 4.) Student received those services twice weekly for 30 minutes each session. (ALJ ¶ 4.) Speech services were provided one-on-one to Student throughout the remainder of the 2011-2012 school year. (ALJ ¶ 6.)

Ms. Dudley, Student's therapist, resumed providing speech services to Student under the IEP in August 2012. (ALJ ¶ 7.) In November 2012, Deer Valley recognized that Student needed a new IEP and set a meeting for November 8, 2012, to review the data and decide if Student needed further evaluation in order to determine school-age eligibility. (ALJ ¶ 8.) At the November 8 meeting, Student's team found that he remained eligible for special education under the category of Speech Language Impairment. (ALJ ¶ 9.) Though Mother wanted to talk about Student's IEP, she was informed that a separate meeting would address that issue. (ALJ ¶ 9.) Once again, Deer Valley informed Parents of their procedural safeguards. (ALJ ¶ 9.)

- 3 -

On November 29, 2012, the IEP team met again and created a new IEP for Student. (ALJ ¶ 11.) This time Mother attended with an advocate, and they both participated in the meeting; there are two substantial sections with Mother's input in the 2012 IEP. (ALJ ¶ 11.) The new IEP noted that Student met the two goals from his prior IEP and added four new speech goals, one at the request of Mother. (ALJ ¶ 12.) Parents continued to reject developmental preschool for Student. (ALJ ¶ 12.) Speech service minutes remained the same, but the IEP added 60 minutes per quarter of speech consultation with Mother to help with low-tech assistive technology devices. (ALJ ¶ 12.) The IEP team discussed and denied Student's eligibility for ESY services at that time. (ALJ ¶ 12.)

From December 2012 to February 2013, Student went through several comprehensive evaluations. (ALJ ¶ 14.) On February 28, 2013, Student's IEP team met and created a new IEP for Student based on the findings from the evaluations. (ALJ ¶ 16.) Student's February 2013 IEP contained multiple goals in communication, fine motor skills, and preschool communication skills, and determined that Student was eligible for ESY in summer 2013. (ALJ ¶ 17.) Mother rejected the 2013 IEP and instead wanted the IEP team to consider Parents' home-based program. (ALJ ¶ 18.) The IEP team met and considered Parents' plan but rejected it, characterizing it as just an average family's activities in addition to speech therapy and music therapy. (ALJ ¶ 18.)

According to a Prior Written Notice ("PWN") Deer Valley issued on February 28, 2013, Student was scheduled to start developmental preschool on March 11, 2013. (ALJ ¶ 19.) He did not attend on that date or thereafter. (ALJ ¶ 19.) Deer Valley still empanelled Student's IEP team in April 2013 and continued to offer him the placement and services in his 2013 IEP. (ALJ ¶ 19.) Because Student did not attend school for more than 10 consecutive days, Deer Valley withdrew him from the district as required by Arizona law.[1] (ALJ ¶ 19.)

---

[1] The ALJ states that after ten days of non-attendance, Deer Valley dis-enrolled Student in March, yet continued to empanel the IEP team in April. However, Deer Valley actually dis-enrolled Student in May, retroactively effective to March 11, 2013. Thus, the

## II.     LEGAL STANDARD

Under IDEA, any aggrieved party may bring a civil action in federal district court after receiving the final decision of an ALJ. 20 U.S.C. § 1415(i)(2)(A). The moving party bears the burden of proving the ALJ's decision was not met by a preponderance of the evidence. *Clyde K. v. Puyallup Sch. Dist. No. 3,* 35 F.3d 1396, 1399 (9th Cir. 1994). The district court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

In their briefs, the parties provide different statements of the standard of review they argue the Court should apply. Plaintiffs contend the Court must review the ALJ's findings, conclusions, and decision *de novo* (Br. at 1), and Deer Valley contends complete *de novo* review is inappropriate (Answer at 3).

In a judicial proceeding under IDEA, a reviewing court is required to conduct a modified *de novo* review. *M.L. v. Fed. Way Sch. Dist.*, 341 F.3d 1052, 1061 (9th Cir. 2003). The Court reviews *de novo* the question whether a school district's proposed IEP provided a FAPE under IDEA, but reviews the district court's findings of fact only for clear error. *Timothy O. v. Paso Robles Unified Sch. Dist.*, No. 14–55800 2016 WL 2957215, at *9 (9th Cir. May 23, 2016). Mixed questions of law and fact are reviewed *de novo*, unless the question is primarily factual. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). Courts must not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982). However, it is a matter of district court discretion to decide the degree of deference to give in the ALJ's determination. *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1474 (9th Cir. 1993). In reviewing the administrative record as a whole, courts may accept the conclusions of the

IEP team did not meet after Student was dis-enrolled. Though not pertinent to the issues the ALJ considered, this timeline is important in the analysis of Plaintiffs' fourth Claim in this appeal.

1    ALJ that are supported by the record and reject those that are not. *Fed. Way*, 341 F.3d at

2    1061-62.

3    **III.    ANALYSIS**

4             **A.    Alleged Procedural Violations**

5                     **1.    Parents' Participation at November 2012 Meetings**

6             Plaintiffs claim that the ALJ erred in finding that Parents were full participants in

7    the IEP process. (Br. at 16.) Plaintiffs argue that Deer Valley's procedural errors at the

8    IEP meeting denied Parents full participation. (Br. at 18.) "Parental participation in the

9    IEP and educational placement process is critical to the organization of IDEA." *Doug C.*

10   *v. Hawaii Dept. of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013) (citations omitted).

11   Procedural inadequacies that seriously infringe the parents' opportunity to participate in

12   the IEP formulation process clearly result in the denial of a FAPE. *Id.* However, harmless

13   procedural errors do not constitute a denial of a FAPE. *L.M. v. Capistrano Unified Sch.*

14   *Dist.*, 556 F.3d 900, 910 (9th Cir. 2008).

15           Here, the evidence does not support a conclusion that Parents' opportunity to

16   participate was seriously infringed. Mother was present and participated in both

17   November 2012 IEP meetings and received notice of her procedural rights on both

18   occasions. (R. 110; R. 163.) Plaintiffs argue that Deer Valley misrepresented Parents'

19   rights at the November 8, 2012 IEP meeting when Dr. Price-Barry, school principal,

20   stated they had no right to special education services, and this misrepresentation

21   interfered with Mother's ability to participate in the IEP meeting. (Br. at 17.) At the time,

22   the Doctor thought Student was home-schooled, and stated that "under the law . . .

23   [Parents] have no rights to special education services." (R. 163 at 803.) Dr. Price-Barry

24   made this statement in error. However, this misstatement did not seriously infringe on

25   Mother's participation. The IEP meeting continued for approximately an hour with

26   significant Parental involvement. (R. 163 at 803-30.) Further, Dr. Price-Barry testified

27   that she admitted the mistake and later clarified the issue with Mother.[2] (R. 295 at 515.)

28

---

[2] Upon direct examination, Dr. Price-Barry could not locate in meeting transcripts

1    Plaintiffs also allege that they requested educational records for the November 29,

2    2012 IEP meeting, which Deer Valley did not provide, and this denied them meaningful

3    participation in the IEP meeting. (Br. at 18.) Plaintiffs claim this lack of data means ESY

4    services were not really discussed. (Br. at 17.) At the IEP meeting, Deer Valley did not

5    have certain anecdotal data available for Mother. Ms. Dudley stated she does not

6    typically include this data in progress reports, and she had never had a parent request it

7    before. (R. 295 at 288, 290-91.) Mother was asked to submit a written request to see this

8    additional data. According to the Arizona Department of Education's manual on

9    developing IEPs, parents should receive this data. (*See* R. 152 at 573.) Thus, not

10   providing this data, or requiring Mother to submit a written request for this data, was

11   likely a procedural violation. However, as discussed, Mother was still significantly

12   involved at both IEP meetings. The IEP team provided and discussed other data and

13   considered and rejected ESY services at that time. (R. 110 at 142.)

14   Even though Mother participated in the IEP meeting, Plaintiffs argue Deer

15   Valley's procedural violations still denied Student a FAPE, and they cite *Doug C.* to

16   suggest that Deer Valley cannot be excused for these violations just because no harm

17   resulted. (Reply at 6.) However, the minor violations present here do not rise to the level

18   contemplated by the Ninth Circuit Court of Appeals in *Doug. C.* In that case, the school

19   held an IEP meeting without the parent, over his repeated objections, and made

20   significant changes to the child's educational placement. *Doug C.* reinforced the idea that

21   procedural violations, when they seriously infringe on a parent's participation, can deny a

22   child a FAPE. But that is not the case here. As discussed, and in contrast to *Doug C.*,

23   Mother was present at both IEP meetings and contributed significant input. (R. 110 at

24   135-37.)

25   While there may have been some procedural violations, these did not seriously

26   infringe on Mother's participation and did not deny Student a FAPE. *See Capistrano*, 556

27   _____

28   where she clarified the misstatement with Mother, but insisted she did. However, she also
     testified that Dr. Gray spoke with Mother almost immediately over the phone and
     clarified the issue. (R. 295 at 525.)

F.3d at 910. Additionally, Deer Valley provided Parents notice of their procedural safeguards at each meeting. Upon review, the Court finds sufficient evidence in the record exists to support the ALJ's findings that ESY services were discussed at the meeting (ALJ at 10) and that Parents were full participants in the IEP process (ALJ at 21).

### 2.      Defining ESY Services in the February 2013 IEP

Plaintiffs claim that Deer Valley denied Student a FAPE because the February 2013 IEP did not target any specific goals or define the ESY services offered. (Br. at 19.) According to Deer Valley's Student Services Procedural Manual, if ESY is necessary, the type and amount of special education services to be provided should be documented in the IEP. (R. 149, Student Services Procedural Manual ("Manual") at 273.) Student's IEP stated that ESY services were necessary because he was at a critical stage of development in speech sound production. (R. 135 at 380.) Though the IEP explained the need for ESY services, it did not define the frequency, duration, and location of the ESY services to be provided.

However, Deer Valley's forensic psychologist, Dr. Gray, testified that not following this procedure does not mean they were not in compliance. (R. 296 at 645.) The Doctor reasoned that the IEP meeting was four months before the 2013 summer, and for a child of this age it was too early to specify the particulars of the ESY services because the child's needs could change. (R. 296 at 645.) Moreover, Ms. Kirkland, Deer Valley's early childhood manager, testified that the plan was for the therapist to talk with Mother towards the end of the school year and decide the details of the ESY services based on the IEP and Student's progress, and these details would be defined separately in other documents. (R. 296 at 558-59.)

Plaintiffs argue that this procedure is contrary to Deer Valley's requirements and the failure to define the ESY services in the IEP was a substantive violation that denied Student a FAPE. (Br. at 19; Reply at 8.) However, as the ALJ noted, Plaintiffs cite no

legal authority to support this position.[3] And on its own search, the Court could not find any precedent supporting Plaintiffs' argument—in fact, the only relevant case found supports the opposite conclusion. In an out-of-circuit case, parents argued that a school district violated IDEA because the IEP failed to enumerate clear goals and special instructions for their child's ESY program. *J.N. v. S. W. Sch. Dist.*, No. 1:14–CV–974, 2015 WL 5512291, at *13 (M.D. Pa. Sept. 15, 2015). The district court held that nothing in IDEA "prescribe[s] the manner or extent to which ESY services are to be delineated." *Id.*

Upon review, the Court finds sufficient evidence in the record exists to support the ALJ's finding that Plaintiffs' claim was not supported by the law or facts in evidence, and that Deer Valley did not deny Student a FAPE when ESY services were not defined in the IEP.

### 3.       Denial of Request for May 2013 IEP Meeting

Plaintiffs claim that Deer Valley denied their request for an IEP meeting in May 2013 after Deer Valley unilaterally dis-enrolled Student, and this failure to hold an IEP meeting denied Student a FAPE. (Br. at 20-21.) Plaintiffs argue that the ALJ misunderstood the legal issues in the original hearing when he failed to address Deer Valley ignoring Parents' request for an IEP meeting. (Br. at 20.) Considering only dis-enrollment, the ALJ dismissed the claim, finding it to be a matter of state law that did not fall under IDEA. (ALJ at 5-6.) In response, Deer Valley argues that the ALJ did not misunderstand the issues because the Due Process Complaint before him did not mention any denial of Parents' request for an IEP meeting in May 2013, but rather only stated that Student was dis-enrolled unilaterally by Deer Valley when he should not have been. (Compl. at 5; Answer at 12.) Deer Valley contends that because this issue was not raised

---

[3] Plaintiffs cite *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1324 (9th Cir. 1987), but the page number cited does not exist in the opinion and, in any event, ESY is not discussed. Thus, the Court does not find Plaintiffs' cited authority relevant to this issue.

1   in the Due Process Complaint and not addressed by the ALJ, the Court should not

2   consider this new claim. (Answer at 13.)

3       After reviewing the record, the Court finds this to be a new claim first raised in

4   Plaintiffs' Opening Brief. However, the Ninth Circuit recognizes an exception to the

5   general rule that a court should not consider an issue raised for the first time on

6   appeal: when the issue presented is purely one of law and the pertinent record has been

7   fully developed. *Gerger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Because the

8   Court considers this claim to be one purely of law, with the factual record completely

9   developed below, the Court exercises its discretion to review Plaintiffs' claim.

10      Plaintiffs allege that Deer Valley committed a procedural error when it did not

11  grant Parents' request for an IEP meeting, and this error significantly impeded their

12  opportunity to participate in the decision-making process and denied Student a FAPE.

13  (Br. at 21.) A parent may request in writing a meeting to review an IEP, which shall take

14  place within 15 school days or at a mutually agreed upon time, but not to exceed 30

15  school days after the request. A.A.C. R7-2-401. However, if at any time after the initial

16  provision of special education and related services, the parent of a child revokes consent

17  in writing for special education and related services, the school is not required to convene

18  an IEP team meeting for further services. 34 C.F.R. § 300.300(4)(iv).

19      On May 7, 2012, Mother requested a meeting with Deer Valley to discuss her

20  suggested home-based program. (R. 211.) Deer Valley proposed a meeting date of May

21  17, but Mother declined that offer and stated she was not available at that time. (R. 179 at

22  918-19.) Mother then requested a formal IEP meeting for the following week. (R. 179 at

23  919.) In reply, Dr. Gray told Mother, "Unfortunately, we are now at the end of the school

24  year," and he said it would not be possible to hold an IEP meeting because all of the team

25  members would not be available. (R. 144.) At this time, Dr. Gray also informed Mother

26  that Student was dis-enrolled from school for non-attendance, as required by Arizona

27  law. Dr. Gray also noted that Mother made clear she had no intention of enrolling student

28  at Deer Valley for the remainder of the school year. Dr. Gray informed Mother that if she

1   wanted Student to attend school at Deer Valley for the following school year, she could
2   reenroll Student and Deer Valley would provide services under Student's current IEP.
3   Also, Dr. Gray stated that Mother could request another IEP meeting at that time, and
4   Deer Valley would convene a meeting within 15 school days.

5        Upon review, the Court finds that Deer Valley complied with IDEA and the
6   Arizona regulations implementing IDEA. Plaintiffs argue that the record demonstrates
7   Deer Valley asserted a policy of only holding IEP meetings when a student is enrolled in
8   the school. (Reply at 8.) The Court does not find support for this argument in the record.
9   Dr. Gray makes no mention of Deer Valley policy when dis-enrolling Student and
10  discussing IEP meeting dates. In contrast, Dr. Gray states the reason for not meeting
11  during Parent's requested time is the inability to gather all IEP team members because it
12  was the final week of the school year. Further, Dr. Gray notes Parent's rejection of Deer
13  Valley's program and receipt of her "10-day Notice of Intent" to provide her own home-
14  based program. Dr. Gray states that if Parent wanted Student to attend school at Deer
15  Valley, she would need to reenroll him and could request an IEP review at that time. But
16  he does not say enrollment is required to request an IEP meeting.

17       The Court finds Mother's notice of intent to be a rejection of Deer Valley's
18  services, which relieved Deer Valley of its obligations to hold an IEP meeting at that
19  time. *See* 34 C.F.R. § 300.300(4)(iv). Further, under Arizona regulations, Deer Valley
20  was not required to hold an IEP review meeting until 15 school days after a parent's
21  request. Because Mother issued her formal request on May 14—near the end of the
22  school year—the 15 school days would have expired in August of the following school
23  year. Because Deer Valley was not required to hold an IEP meeting until August anyway,
24  asking Parents to return in August to request another IEP meeting was not unreasonable.
25  Moreover, Student had a current IEP in place and Deer Valley expressed it was "ready,
26  able, and willing" to implement that IEP. (R. 144 at 432.)

27       Considering all of the circumstances, the Court finds that not holding an IEP
28  meeting in May 2013 and asking Parents to request an IEP meeting at the beginning of

next school year did not seriously infringe on Parents' opportunity to participate in the IEP formulation process or result in the loss of an educational opportunity. *See Amanda J.*, 237 F.3d at 892. Thus, Plaintiffs' claim that Deer Valley's refusal of Parents' request for an IEP meeting denied Student a FAPE fails.

**4.     Parents' Access to Student's Records**

Plaintiffs allege that the ALJ erred in finding no persuasive evidence that Parents were ever denied access to Student's educational records. (Br. at 21.) Plaintiffs raise two arguments: first, Deer Valley did not comply with Parents' records request *before* the November 2012 IEP meeting, and second, Deer Valley did not comply with a records request made *at* the November meeting. (Br. at 22.) To guarantee parents the ability to make informed decisions about their child's education, IDEA grants them the right to inspect and review all relevant records relating to their child's identification, evaluation, and educational placement. *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001). The school must comply with a parent's request to review these records without unnecessary delay and before any IEP meeting. 34 C.F.R. § 300.613(a). Procedural errors that seriously infringe on a parent's opportunity to participate in the IEP or result in the loss of an educational opportunity deny a student a FAPE. *Amanda J.*, 237 F.3d at 892.

As to Mother's request to see data at the IEP meeting, the Court addressed this above in Plaintiffs' fourth claim. While this may have been a procedural violation, it did not significantly interfere with Mother's participation at the IEP meeting. Further, because Deer Valley granted ESY services for Student—the reason Mother was seeking the data in the first place—Deer Valley did not deny Student an educational opportunity. Thus, the Court finds sufficient evidence exists in the record to support the ALJ's finding that Student was not denied a FAPE when Deer Valley did not provide the records at the IEP meeting.

Addressing Plaintiffs' second argument, this appears to be another new claim first raised in Plaintiffs' Opening Brief and not considered by the ALJ. However, as the Court

finds this issue to be one purely of law, with the relevant facts fully developed and undisputed, the Court exercises its discretion to resolve the issue here. Moreover, Defendants raised no objection in their Answer to Plaintiffs bringing this new claim. Mother submitted a written request to Deer Valley on November 20, 2012 to "review any and all documents on file with [Deer Valley] on my son." (R. 216 at 1077.) Dr. Gray responded that either Ms. Dudley (Student's therapist) or Ms. Baker (school psychologist) would contact Mother within a week to schedule an appointment to review these records. (R. 216 at 1078.) According to testimony by both Mother and Ms. Dudley, this never happened. (R. 295 at 293; R. 296 at 723.) Mother attended the next IEP meeting on November 29, 2012 without these records.

Citing *Amanda J.*, Plaintiff argues that failing to disclose Student's records prevented her full participation in the IEP meeting and resulted in the denial of a FAPE. (Br. at 22.) The Court disagrees. The procedural violations in *Amanda J.* were so severe that the court described them as "driving a stake into the heart of [IDEA]." 267 F.3d at 893. In comparison, the violations here are minor. In *Amanda J.*, the school withheld vital information about a student's autism for over a year and lied about test results, likely severely setting back the child's development. Here, Deer Valley received a records request seven days before a planned IEP meeting, and failed to comply in time. But upon a second request, it provided the records within 15 days.[4] Though Mother did not have all records in hand, she attended the November 29, 2012 IEP meeting with an advocate and contributed significantly. (R. 110 at 133-53.) Further, the next IEP meeting was held in February 2013 where Deer Valley had given Parent extensive information and granted the ESY services requested. (R. 135 at 368-89.)

Upon review, the Court finds Deer Valley committed procedural error by not providing the requested records before the November 2012 IEP meeting. However, this error did not rise to the level required to seriously infringe on Parents' participation. *See*

---

[4] Mother submitted a second extensive request for Student's records on December 5, 2012 (R. 173 at 887-88) and Deer Valley complied, providing those records on December 20, 2012 (R. 173 at 890-91).

1   *Doug C.*, 720 F.3d at 1047 (holding that not every procedural violation results in the
2   denial of a FAPE). Further, because Deer Valley later granted Student the ESY services
3   Parents requested, Student was not denied an educational opportunity. Thus, the Court
4   finds Deer Valley did not deny Student a FAPE. *See Amanda J.*, 237 F.3d at 892.

5   **5.      Properly Measuring Progress in 2011–2012**

6          Plaintiffs claim the ALJ erred in finding that they did not prove Deer Valley failed
7   to collect data about Student's progress on his IEP goals. (Br. at 23.) Plaintiffs further
8   argue that the ALJ misstated their claim as failing to collect data, when the true claim
9   was failing to collect data according to the requirements in the IEP. (Br. at 23.) Failure to
10  perform exactly as required by an IEP does not violate IDEA unless the violation
11  materially fails to implement a child's IEP. *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d
12  811, 815 (9th Cir. 2007). A material failure occurs when there is more than a minor
13  difference between the services a school provides and the services required by the IEP.
14  *Id.* A procedural error may result in the denial of a FAPE if it results in the loss of an
15  educational opportunity. *Fed. Way*, 394 F.3d at 657. An educational opportunity is lost
16  where, absent the error, there is a strong likelihood that alternative educational
17  possibilities for the student would have been better considered. *Id.*

18         Plaintiffs argue that the facts show that Student's progress data was not collected
19  according to the requirements of the IEP, and failing to adhere to these terms was a
20  material failure that denied Student a FAPE. (Reply at 9.) Though Plaintiffs claim the
21  record proves these allegations, they offer no citations in support. Upon its own review of
22  the record, the Court finds these arguments have no merit. Student's IEP requires
23  measuring of goals over three consecutive therapy sessions, as measured by therapist data
24  collection. (R. 100 at 87; Br. at 23.) As required, Ms. Dudley's Therapy Log contains
25  multiple instances of goal progress measured over three consecutive therapy sessions. For
26  just one example, Student's CV and VC combinations were measured on September 7,
27  10, and 12 with notes, results, and percentage scores. (R. 137 at 397.)

28

Even if Student's goal progress was not collected correctly, it did not deny Student a FAPE. While Plaintiff correctly cites *Van Duyn* for the proposition that a material failure to implement an IEP can result in a denial of a FAPE, a close reading of the facts in *Van Duyn* demonstrates that Deer Valley's actions in this case, by comparison, were not a material failure. In *Van Duyn*, the school failed to implement several elements of a behavior management plan in an IEP. 502 F.3d at 823–24. The court concluded that this was not a material failure for several reasons. *Id.* at 824. First, the IEP did not clearly describe how these elements were to be used. *Id.* Second, some of the aspects of the plan were used, even if not quite as the parent envisioned. *Id.* And third, the student's behavior showed improvement. *Id.*

Here, Student's IEP stated that goals should be measured over three consecutive sessions by therapist data collection. (R. 100 at 88.) But, like the IEP in Van Duyn, it did not clearly describe how to collect the data, or what forms to use. The evidence in the record shows Ms. Dudley did collect and record data on Student's goals—though perhaps not in the way Parents preferred. (R. 137 at 392-404.) Further, the progress reports show that Student made improvement in both of his IEP goals. (R. 107 at 123.) The *Van Duyn* court did find a material IEP implementation failure in the provision of only 8-10 hours of math instruction for the child when he required closer to 15 hours. 502 F.3d at 823. In contrast, Plaintiffs' allegation here of improperly collecting data is, at most, a technical violation that did not materially affect the implementation of Student's IEP.

Plaintiffs also allege that Student's progress reports could not be validated against the progress logs, thus rendering Student's progress reports invalid. (Br. at 23-24.) According to Plaintiffs, if the IEP team was aware the data was invalid, there is a strong likelihood that they would have more thoroughly considered an increase in speech service minutes. (Br. at 24.) Even assuming the progress data could not be validated—which the Court takes no position on—the testimony in the record does not support this claim. When asked if she would change her opinion on speech service minutes if she knew the therapist could not validate the data, Ms. Buringrud, an IEP team member, replied that it

1    is not an easy answer because there are several factors to consider. (R. 295 at 460.) She

2    further stated she would trust the therapist in evaluating the data. (R. 295 at 460.) When

3    pressed, she eventually responded, "The best I can say is maybe." (R. 295 at 462.) This

4    testimony does not support Plaintiffs' argument that there is a strong likelihood that

5    Student's speech service minutes would have been increased.

6         The Court finds that any error in properly collecting data according to the IEP was

7    not a material failure in implementing Student's IEP. The Court further finds that

8    Plaintiffs failed to show, by a preponderance of the evidence, that Deer Valley denied

9    Student an educational opportunity. Thus, sufficient evidence in the record exists to

10   support the ALJ's factual findings that progress reports were made and Student made

11   progress on his goals, as well as the ALJ's conclusion that Plaintiffs did not prove Deer

12   Valley failed to collect data for Student's progress on his IEP goals.[5]

13              **6.       Properly Measuring Progress in 2012–2013**

14        Plaintiffs assert the same allegations as the previous claim (Claim 7) and apply all

15   the same factual and legal arguments. (Br. at 24.) The Court's reasoning and conclusion

16   are the same. The Court finds that sufficient evidence in the record exists to support the

17   ALJ's finding that Plaintiffs did not prove Deer Valley failed to collect data for Student's

18   progress on his IEP goals.

19              **7.       Providing Progress Reports in a Timely Manner**

20        Plaintiffs allege that the ALJ erred in finding that progress reports were made

21   quarterly. (Br. at 24.) Plaintiffs argue that Deer Valley did not give Parents the October

22   2012 progress report, and this procedural error denied Parents the opportunity to

23   participate in a meaningful way in Student's November 2012 and February 2013 IEP

24   meetings. (Reply at 10.) The Court finds Plaintiffs' argument meritless. Even if Parents

25   did not receive the October progress report, Mother did receive an evaluation report on

26   November 8, which contained all of the relevant information from the progress report and

27

28              [5] Though the ALJ states Plaintiffs' Claim as one in which Deer Valley "failed to
     collect data", the Court finds that the ALJ properly understood Plaintiffs' Claim as
     referenced by the Claim heading (Claim 13) and findings of fact.

1   more. (R. 105 at 109, 111.) Further, as previously discussed, Mother attended the

2   November IEP meeting with an advocate and contributed significantly.

3       Upon review, the Court finds sufficient evidence in the record exists to support the

4   ALJ's finding that no factual or legal authority support Plaintiffs' claim.

5       **B.      Alleged Substantive Violations**

6           **1.      Summer 2012 ESY Services**

7       Plaintiffs claim that the ALJ erred in finding that Student was not denied a FAPE

8   when ESY services were not offered for the summer of 2012. (Br. at 11–13.) Under

9   IDEA and the regulations implementing it, schools are required to provide ESY services

10  as necessary in order to provide a child with a FAPE. 34 C.F.R. § 300.106(a)(1). A

11  school must provide these services only if the child's IEP team determines that such

12  services are necessary for the provision of a FAPE. *Id.* § 300.106(a)(2). IDEA and its

13  regulations do not set forth the specific factors the IEP team must consider in making this

14  decision. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1211 (9th Cir. 2008).

15  Because providing ESY is the exception not the rule, a parent challenging a school's

16  decision about ESY must show that the benefits a disabled child gains during a regular

17  school year will be significantly jeopardized if he/she is not provided with an educational

18  program during the summer months. *Id.*

19      Here, the evidence does not support a conclusion that Student was denied a FAPE

20  when Deer Valley did not offer ESY services to Student in the summer of 2012. Ms.

21  Carahaly, a private speech therapist, testified for Plaintiffs that ESY services would have

22  been appropriate for Student based on the severity of his disability. (R. 298 at 1104.) In

23  contrast, Deer Valley offered testimony from Ms. Dudley, Student's speech language

24  pathologist, that explained why Student did not qualify for ESY services. According to

25  Deer Valley guidelines, the purpose of ESY services is to prevent a child from regressing

26  or to help maintain progress on IEP goals. (*See* Manual at 307.) Ms. Dudley stated there

27  was no regression issue because Student was just beginning speech services, and there

28  was no need for ESY services to maintain goal progress because Student was not working

on a critical skill at that time. (R. 294 at 176.) Further, in evaluating Student's disability, Ms. Dudley knew Student was "Preschool Severe Delay" for communication, but she had several other students with severe communication disorders who did not need ESY. (R. 294 at 179.) Ms. Dudley determined that ESY was not necessary at that time, but she would monitor the Student throughout the year to see if ESY services might be needed. (R. 294 at 179.) According to Ms. Dudley, at the break in the school year, she still did not see a need for ESY services. (R. 294 at 61.) Instead, she gave Mother a variety of activities to practice with Student over the summer break, and when Student returned, Ms. Dudley did not notice any regression issues. (R. 294 at 63.)

In evaluating the testimony, the ALJ stated that Ms. Dudley was in the best position to know if Student needed ESY services. (ALJ at 18.) Plaintiffs claim this comment is in contrast to the Ninth Circuit Court of Appeals' holding in *Amanda J. v. Clark County School District* that parents represent the best interests of the child and possess information which only they are in a position to know. 267 F.3d 877, 882 (9th Cir. 2001). However, the Ninth Circuit's statement refers to the development of an IEP overall—not the necessity of ESY services. In this case, Plaintiff's expert, Ms. Carahaly, evaluated Student's need for an ESY solely by reviewing his records in hindsight. Deer Valley's expert, Ms. Dudley, was the speech pathologist that actually provided services to Student at the time. Comparing the two, the ALJ found that Ms. Dudley was in the best position to know whether Student needed ESY services. The Court finds this conclusion to be reasonable and that Ms. Dudley provided sufficient substantiation for her conclusion that Student did not qualify for ESY services. *See Hellgate*, 514 F.3d at 1212 (holding that the ALJ's decision to rely on testimony of witness that actually observed student over the expert that only reviewed files was reasonable).

Plaintiffs also allege a violation of IDEA when Ms. Dudley made the sole decision about ESY, instead of the whole IEP team. (Br. at 12.) IDEA's regulations state ESY services are only required if a child's IEP team determines they are necessary. 34 C.F.R. § 300.106(a)(2). Student's IEP form states that the "IEP team considered ESY eligibility

1    in the areas of regression and recoupment factors and essential skills at a critical stage of

2    development" and "the IEP team rejected ESY eligibility" in these areas. (R. 100 at 89.)

3    Ms. Dudley also testified that the ESY decision was made "with the IEP team" and that it

4    "was a team decision." (R. 294 at 179.) Whether the decision was actually made by the

5    entire team or by Ms. Dudley individually, it leads to the same result: the IEP team did

6    not determine ESY services were necessary or request them.

7          Plaintiffs further claim that the ALJ erred by not finding the severity of Student's

8    speech disorder persuasive in requiring ESY. (Br. at 13.) However, this does not mean

9    that the ALJ entirely ignored this factor. The ALJ stated that IDEA focuses on a child's

10   needs and not the child's disability category or diagnosis. (ALJ at 18.) While Plaintiffs

11   claim the ALJ's statement is wrong, the Court finds it to be an accurate assessment of the

12   law. IDEA provides that evaluations are to be based on a child's needs, not disability

13   category. *See* § 34 C.F.R. 300.304(a)(6). Additionally, under the relevant ESY section,

14   required services are determined on an individual basis and should not be limited to

15   particular categories of disability. *Id.* § 300.106(a)(3)(i). Further, Ms. Dudley testified

16   that even if Student had been diagnosed with apraxia, she would not have changed

17   anything about her decision. (R. 294 at 183.) She stated she made her decision based on

18   present levels and not the name of a diagnosis. (R. 294 at 183.)

19         While Deer Valley's Manual states that the nature and severity of a child's

20   disability should be considered when making an ESY decision, it is but one of many

21   factors. (Manual at 307.) According to the Manual, the purpose of ESY services is to

22   prevent a child from regressing or to help maintain progress on IEP goals. (*See* Manual at

23   307.) Ms. Dudley testified that she did not feel ESY was necessary because she did not

24   have any data for regression and Student was not in the process of reaching a goal.

25   (R. 294 at 307.) Further, the federal regulations do not specify what factors to consider in

26   an ESY determination. *Hellgate*, 541 F.3d at 1210. Because there are a variety of factors

27

28

to consider in determining entitlement to ESY, the Court finds that the ALJ's ruling that the severity of Student's speech disorder did not require ESY was reasonable.[6]

Upon review, the Court finds sufficient evidence in the record exists to support the ALJ's finding that Ms. Dudley's testimony was credible, and therefore her decision and that of the IEP team to not offer ESY services was reasonable and did not deny Student a FAPE.

### 2.    Speech Services

Plaintiffs claim that the ALJ incorrectly found that Student was provided adequate speech services and was not denied a FAPE. (Br. at 13–16.) To determine whether a student was denied FAPE, the Court applies a "meaningful benefit" standard. *Joshua A. ex rel. Jorge A. v. Rocklin Unified Sch. Dist.*, 319 F. App'x 692, 695 (9th Cir. 2009). A student's IEP provides a meaningful benefit when it is appropriately designed and implemented. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432–33 (9th Cir. 2010). In designing an IEP, the special education and related services must be based on peer-reviewed research to the extent practicable. 34 C.F.R. § 300.320. The methods employed in a student's IEP may be found through an eclectic approach, which is not necessarily peer-reviewed but is based on peer-reviewed research. *Joshua A. ex rel. Jorge A.*, 319 F. App'x at 695. A court must not critique an IEP with the benefit of hindsight; instead, it must evaluate whether the goals and methods were reasonably calculated to ensure that the child would receive educational benefits at the time of implementation. *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058 (9th Cir. 2012).

Plaintiffs maintain that Student's speech therapy was inadequate because it did not follow peer-reviewed recommendations and therefore denied Student a FAPE. (Br. at 15.)

---

[6] Plaintiffs also argue that Deer Valley denied Student a FAPE by not allowing Parents to view ESY data. (Br. at 12.) However, the testimony Plaintiffs cite refers to the November 2012 IEP which does not apply to this claim about the 2011 IEP. Moreover, to the extent Plaintiffs also argue that Arizona law required Deer Valley to reconvene an IEP meeting 45 calendar days before the end of school (Br. at 11.), the Court disagrees. Deer Valley complied with Arizona law when it determined eligibility for ESY services at the 2011 IEP meeting, and the statute does not require a second meeting. *See* A.A.C. R7-2-408.

Ms. Carahaly, an American Speech-Language Hearing Association (ASHA) certified speech-language pathologist, testified that children with apraxia need three to five individual sessions per week as recommended by peer-reviewed research by the ASHA Technical Report. (R. 298 at 1063.) Plaintiffs focus heavily on this report in their argument.

In his ruling, the ALJ stated that the ASHA report and Ms. Carahlay's recommendations were based on a high standard that Deer Valley was not required to meet. (ALJ at 19.) The ALJ also noted that the ASHA report addresses how to treat apraxia, and Deer Valley is not required to treat Student's disability. The Court agrees. The ASHA report discusses "treatment" and recommendations for "optimum progress". (R. 150 at 539.) IDEA does not require Deer Valley to provide Student optimum progress. *See Amanda J.*, 267 F.3d at 890 (holding that an appropriate education does not mean the absolute best).

However, while Deer Valley was not bound by ASHA's recommendations, it was bound to consider some peer-reviewed recommendations. The record shows that this was not done. Deer Valley does not cite or reference any peer-reviewed research for the methods employed in Student's IEP. When asked if she used any peer-reviewed research to determine that 240 service minutes was appropriate, Ms. Dudley replied that she used her professional knowledge and courses she attended. (R. 294 at 204.) Further, she states, "I do know it's appropriate for children with various communication disorders." (R. 294 at 204.) This is in stark contrast to IDEA's requirement that IEPs be individually tailored to the unique needs of each child. *JG v Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 802 (9th Cir. 2008). While it is not Deer Valley's responsibility to maximize the education of the child, by not following the suggested standards under any peer-reviewed research, Deer Valley only provided an opportunity for minimal academic advancement, which violates IDEA. *See Amanda J. ex rel. Annette J.*, 257 F.3d at 890.

Deer Valley argues that Parents refused its offer of developmental preschool for Student, which would have added an additional 270 minutes per month for speech sound

1   production. (Answer at 9.) Had Parents accepted Deer Valley's offer, Student would have

2   actually exceeded the minutes Parents sought. However, these additional minutes would

3   have been in a classroom setting and not an individual session as recommended by Ms.

4   Carahaly or the ASHA report. Though Ms. Buringrud testified too much one-on-one

5   instruction might actually be harmful, she cited no peer-reviewed authority for her

6   opinion.

7        Plaintiffs also allege that the ALJ erred in finding that Student made progress with

8   the number of hours provided for speech services. (Br. at 14.). But as the ALJ found,

9   Student's progress report and Ms. Dudley's therapy logs do show some Student progress.

10  (R. 107; R. 137.) Whether these results can be properly validated is a debate between

11  competing experts. This, however, bears no effect on the analysis of Student's IEP. The

12  Court disagrees with the ALJ's finding that because Student made some progress,

13  Plaintiffs' Claim of inadequate speech service minutes fails. (ALJ at 19.) The sufficiency

14  of a Student's IEP is to be judged at the time of development—not in hindsight. *See*

15  *Anchorage*, 689 F.3d at 1058. At the time Deer Valley developed Student's IEP, it was

16  not based on any peer-reviewed research or individualized for Student's unique needs.

17  Thus, at the time, it was not reasonably calculated to enable Student to receive

18  educational benefits. This is a substantive violation of IDEA. *See J.W.*, 626 F.3d at 432

19  (9th Cir. 2010) (noting that a school can be liable for a substantive violation by

20  inappropriately drafting an IEP). Accordingly, the Court finds that the ALJ erred in

21  finding Student received adequate speech services.

22  **IV.    CONCLUSIONS**

23       Considering all of Plaintiffs' claims of procedural violations, the Court finds no

24  error on the part of the ALJ and finds his decision denying Plaintiffs' claims was

25  supported by substantial evidence in the record (Procedural Claims 1–7). Plaintiffs' claim

26  that the ALJ erred in finding that Student was not denied a FAPE when ESY services

27  were not offered for the summer of 2012, (Substantive Claim 1), also fails. As to

28  Plaintiffs' claim that Deer Valley did not provide Student adequate speech services

(Substantive Claim 2), the Court finds reversible error in the ALJ's decision. The Court finds that Deer Valley failed to provide Student with adequate speech services and thus denied Student a FAPE.

**IT IS THEREFORE ORDERED** reversing the September 2, 2014 decision of the Administrative Law Judge, (ALJ at 23), with respect to the adequacy of Deer Valley's provision of speech services under IDEA.

**IT IS FURTHER ORDERED** remanding this matter for further proceedings on the issues of reimbursement and compensatory education.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 19th day of July, 2016.

Honorable John J. Tuchi
United States District Judge